1
SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
   A Limited Liability Partnership
2
   Including Professional Corporations
DOUGLAS R. HART, Cal. Bar No. 115673
3
JENNIFER B. ZARGAROF, Cal. Bar No. 204382
DANIEL J. McQUEEN, Cal. Bar No. 217498
4
JULIE WONG, Cal. Bar No. 247342
333 South Hope Street, 48th Floor
5
Los Angeles, California  90071-1448
Telephone:  213-620-1780
6
Facsimile:  213-620-1398
dhart@sheppardmullin.com
7
jzargarof@sheppardmullin.com
dmcqueen@sheppardmullin.com
8
jwong@sheppardmullin.com

9
Attorneys for Defendants LONGS DRUG
STORES CALIFORNIA, INC.; LONGS
10
DRUG STORES CORPORATION; LONGS
DRUG STORES CALIFORNIA, L.L.C.,
11
LONGS DRUG STORES, L.L.C., CVS
CAREMARK CORPORATION

12

                    UNITED STATES DISTRICT COURT

13

                  SOUTHERN DISTRICT OF CALIFORNIA

14

15
CHARLES JONES, individually, and          Case No.: 08-cv-2156 W NLS
on behalf of other members of the
16
general public similarly situated,        **DECLARATION OF DANIEL J.**
                                          **McQUEEN IN SUPPORT OF**
17
                    Plaintiff,            **DEFENDANTS' MOTION FOR**
                                          **SUMMARY JUDGMENT OR**
18
          v.                              **PARTIAL SUMMARY JUDGMENT**

19
LONGS DRUG STORES                         Hearing Date:  November 16, 2009
CALIFORNIA, INC., a California            Time:  10:30 a.m.
20
corporation; LONGS DRUG STORES            Room:  7
CORPORATION, a Maryland
21
corporation; LONGS DRUG STORES            NO ORAL ARGUMENT PURSUANT
CALIFORNIA, L.L.C., a California          TO LOCAL RULE
22
limited liability corporation; LONGS
DRUG STORES, L.L.C., a Maryland           [Filed concurrently with Notice of
23
limited liability corporation; CVS        Motion and Motion, Memorandum of
CAREMARK CORPORATION, a                   Points and Authorities, Separate
24
Delaware corporation;                     Statement of Undisputed Material Facts,
                                          Request for Judicial Notice, Declaration
25
                    Defendants.           of Sandy Reynoso, and [Proposed]
                                          Order]
26

27                                        [Complaint Filed:  November 21, 2008]
                                          Trial Date:  None Set
28

## DECLARATION OF DANIEL J. McQUEEN

I, Daniel J. McQueen, declare as follows:

1.      I am an attorney at law duly licensed to practice before all of the Courts of the State of California and the United States District Court for the Southern District of California.  I am an associate with the law firm of Sheppard, Mullin, Richter & Hampton LLP, attorneys of record for Defendants LONGS DRUG STORES CALIFORNIA, INC.; LONGS DRUG STORES CORPORATION; LONGS DRUG STORES CALIFORNIA, L.L.C., LONGS DRUG STORES, L.L.C., CVS CAREMARK CORPORATION (collectively, "Defendants").  I have personal knowledge of the facts contained in this declaration and, if called as a witness, could and would testify competently thereto.

2.      I am in possession of a certified copy of Plaintiff Charles Jones' deposition in this matter, including all exhibits thereto.  True and correct copies of relevant pages from this deposition transcript are attached to this declaration as Exhibit A.

3.      Plaintiff authenticated a copy of his offer of employment letter, dated November 2, 2006, at his deposition.  This letter was attached as an exhibit to his deposition transcript.  A true and correct copy of this letter is attached to this declaration as Exhibit B.

4.      Plaintiff produced copies of his paystubs at his deposition, which were attached to his deposition transcript as an exhibit.  True and correct copies of certain of these paystubs are attached to this declaration as Exhibit C.

W02-WEST:1DJM1\402231113.1                              DEFENDANTS' MSJ:  DECLARATION OF DANIEL J. McQUEEN

1    I declare under penalty of perjury under the laws of the State of

2    California that the foregoing is true and correct.

3

4    Executed October 15, 2009, at Los Angeles, California.

5

6

7    _____

8    DANIEL J. McQUEEN

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

W02-WEST:1DJM1\402231113.1                    DEFENDANTS' MSJ:  DECLARATION OF DANIEL J.
                                                               McQUEEN

# EXHIBIT A

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

CHARLES JONES, individually, and    )
on behalf of other members of the   )
general public similarly situated,  )
                                    )
          Plaintiff,                )
                                    )
     vs.                            )   Case No.:
                                    )   08-CV-2156 W NLS
LONGS DRUG STORES CALIFORNIA, INC., )
a California corporation; LONGS     )
DRUG STORES CORPORATION, a Maryland )
corporation; LONGS DRUG STORES      )
CALIFORNIA, L.L.C., a California    )
limited liability corporation;      )
et al.,                             )
                                    )
          Defendants.               )
_____)


DEPOSITION OF CHARLES HAROLD JONES

AUGUST 25, 2009



**ABRAMS, MAH & KAHN**
R E P O R T I N G   S E R V I C E

Reported By:  Erika Kotteakos
              CSR No. 9698

File No.:  27952

4101 Birch Street • Suite 130
Newport Beach • California 92660
949-261-8686 • 800-622-0226

1                    UNITED STATES DISTRICT COURT

2                   SOUTHERN DISTRICT OF CALIFORNIA

3

4    CHARLES JONES, individually, and    )
     on behalf of other members of the   )
5    general public similarly situated,  )
                                         )
6              Plaintiff,                 )
                                         )
7         vs.                            ) Case No.:
                                         ) 08-CV-2156 W NLS
8    LONGS DRUG STORES CALIFORNIA, INC., )
     a California corporation; LONGS     )
9    DRUG STORES CORPORATION, a Maryland )
     corporation; LONGS DRUG STORES      )
10   CALIFORNIA, L.L.C., a California     )
     limited liability corporation;      )
11   et al.,                             )
               Defendants.               )
12   _____)

13

14

15

16            Deposition of CHARLES HAROLD JONES, taken on

17        behalf of the Defendants, at 501 West Broadway,

18        Suite 1900, San Diego, California, commencing

19        at 10:23 a.m., on Tuesday, August 25, 2009,

20        reported by Erika Kotteakos, CSR No. 9698, RPR.

21

22

23

24

25

                                1

                        ABRAMS, MAH & KAHN

1          Take however much time you need before

2    answering my question -- oh, I will let you know, too,

3    that in the space to the upper right-hand corner, it

4    says, "Social Security Number," and you'll see that is

5    blank.

6          And we forgot to stamp the word "Redacted,"

7    but just so you know, any documents that had your social

8    security number on it, we've whited it out, just so

9    it's -- there's no issue with it getting in the wrong

10   hands and being publicly available.  So that has been

11   whited out; otherwise, it's unchanged.

12         So my question is, do you recognize this as

13   being the employment application you filled out in

14   relation to your employment application at Longs?

15        A    Yes, must be.

16        Q    And is that your handwriting on that first

17   page?

18        A    Yes.

19         (Deposition Exhibit 2 was marked for

20        identification and is attached hereto.)

21   BY MS. ZARGAROF:

22        Q    So the court reporter has handed you a

23   document we've marked as Exhibit 2.  It's a two-page

24   document, and the first one, it says, "Longs Drugs" in

25   the upper left-hand corner, and there's some handwriting

14

ABRAMS, MAH & KAHN

1    on the first page.

2           And if you could switch to the second page,

3    you'll see the signature line of the letter, and then

4    also another signature line.

5           Is that your signature there on page 2?

6    A    Yeah.

7    Q    And that's the date that you filled in over

8    there to the right of the signature?

9    A    Yep.

10   Q    And do you recognize this as the offer letter

11   you received --

12   A    Yes.

13   Q    -- in connection --

14          You've got to let me finish.  It's hard.  I

15   know you know where I'm going, it's just harder for the

16   court reporter.  I don't mind, but it makes it hard for

17   her to get everything down.

18          So this is the offer letter that you received

19   in connection with your employment at Longs?

20   A    Yes.

21   Q    And drawing your attention down to Number 1

22   there, it indicates that the wage is $53 per hour.

23          Is that consistent with what you recall your

24   starting wage to be at Longs?

25   A    Yes.

15

ABRAMS, MAH & KAHN

1     Q    Did your wage ever go up at any point while

2  you were at Longs?

3     A    Yes.

4     Q    What did it go up to?

5     A    Honestly, I can't recall, but it did go up.

6     Q    Do you recall what your final wage was at

7  Longs?

8     A    No, I can't.

9     Q    And a little further up the page, in the first

10 paragraph, it indicates that you're being offered the

11 position of pharmacy manager in District 808, and

12 Store 310, La Jolla.

13        Is that all consistent with your recollection

14 of where you started?

15    A    Yes.

16    Q    And did you ever change out of the pharmacy

17 manager position while at Longs?

18    A    Yes.

19    Q    What did you change to?

20    A    I'm not sure what the term is, but sort of

21 the -- I'd say the float pharmacist, covering shifts.

22    Q    Did you ever hear it referred to as the relief

23 pharmacist?

24    A    Yes.

25    Q    That was the term?

16

ABRAMS, MAH & KAHN

1          A     Yes, I did.

2          Q     What degree did you receive?

3          A     Bachelor's in pharmacy, BPharm.

4          Q     And have you attended any colleges or

5     universities in the U.S.?

6          A     Have not.

7          Q     And are you a certified pharmacist in the

8     U.S.?

9          A     Yes.

10         Q     When did you receive your certification?  When

11    did you first receive it?

12         A     That's going to be a tough question.   '92.

13         Q     And has your certification remained current

14    since then?

15         A     Yes.

16         Q     And in order to get your pharmacy

17    certification here in the U.S., did you have to take any

18    examinations?

19         A     Yes.

20         Q     What type of exam did you take?

21         A     It was a California board exam.

22         Q     And is that just one time that you had to take

23    it?

24         A     No, I had to take it twice, because it was --

25    in my -- in '92, in that period, it was split into two

                              29

ABRAMS, MAH & KAHN

```
 1    minute?
 2          MS. ZARGAROF:  Sure.
 3              (Brief recess was taken.)
 4          MR. ARELLANO:  Okay.  Back on.
 5          THE WITNESS:  Oh, well, can I add something?
 6          MR. ARELLANO:  Of course.
 7          THE WITNESS:  When you asked me about a bonus for
 8    relief pharmacists, well, not that I'm aware.  I was
 9    never aware there was a bonus.  I mean, there could have
10    been.  I don't know.  I just assumed there was nothing,
11    but --
12    BY MS. ZARGAROF:
13          Q    Do you recall receiving one as a relief
14    pharmacist?
15          A    It's been too many years.  I mean, I don't
16    know.  I just don't know that.
17          Q    And what is your understanding of what claim
18    or claims you are alleging against Longs in your
19    lawsuit?
20          A    The claims are --
21          MR. ARELLANO:  Let me get in an objection.  Calls
22    for a legal conclusion.
23              You can go ahead.
24          THE WITNESS:  Do you want to --
25          MR. ARELLANO:  No, it's fine.  I just made my
```

                              41

1    objection.  They will be really short objections.

2         THE WITNESS:  Okay.  The first one is the -- the

3    name, the name is not clear, the entity of the company.

4    The second is the total number of hours paid not being

5    totaled.  And the third one is the social -- at the

6    time, the social security number was not on the pay

7    stub.

8    BY MS. ZARGAROF:

9         Q    Any other claims you understand that you're

10   bringing against the defendants in this case?

11        A    Not at this time.

12        Q    The first thing you mentioned, something about

13   the name not being clear, what did you mean by that?

14        A    Well, as far as I understand, the -- the name

15   is not defined properly.  It could be LLC, Inc., and it

16   had a couple -- if anybody wanted to take legal action

17   against this company, it could be a problem, just the

18   name not being distinct.

19        Q    When did you first become aware that the name

20   was not defined properly?  Well, let me back up a

21   second.

22             You're referring to your pay stub; is that

23   right?

24        A    Yeah.  The documents there.  Yeah.

25        Q    The documents you produced today the originals

                          42

1    of?

2         A    Yeah.

3         Q    And when did you first learn or become aware

4    that the name was not defined properly on your pay stub?

5         A    What year?   '08, 2008.

6         Q    So after your employment at Longs had ended?

7         A    Yes.

8         Q    And how did you become aware?

9         MR. ARELLANO:   I'm going to again counsel, just

10   remember not to reveal any kind of communication between

11   you and anybody, including myself, at our law firm.

12             But you can answer.

13        THE WITNESS:   After consulting with my lawyer.

14   BY MS. ZARGAROF:

15        Q    And what is the name that is on your pay stubs

16   of your employer?

17        A    I think it's -- I have a copy.   I think it

18   says "Longs Drugs" on it.   I don't --

19        Q    Without referring to the pay stubs, do you

20   remember what employer name it says on there?

21        A    It says "Longs," I think.

22        Q    And what do you believe is the correct name

23   that should have been on your pay stubs?

24        A    Whatever the company's registered as.

25        Q    Registered with whom?

                            43

1          A     With the state.

2                And also I guess it has -- this one, it says,

3     "Longs Drug Stores Corporation" (indicating).  And I

4     guess they were "LLC."  All kinds of different entities.

5          Q     You're referring to Exhibit 8, which is in

6     front of you?

7          A     Yeah, this, as an example.  I guess sometimes

8     they weren't consistent in it.

9          Q     And were you ever damaged or harmed in any

10    way, in your mind, by the fact that it said what you

11    believe -- or that you believe it said "Longs" on your

12    pay stubs?

13         MR. ARELLANO:  Objection; calls for a legal

14    conclusion.  And it's vague and ambiguous as to

15    "damaged."

16               You can answer, though, to the extent -- like

17    I said, don't guess.  As long as you understand what she

18    means by "damaged."  If you don't understand --

19         MS. ZARGAROF:  Don't coach him on the record.

20    Let's not go there.  You made your objection.

21         MR. ARELLANO:  I'm just letting him know don't

22    speculate.

23         THE WITNESS:  Damage is not receiving a proper wage

24    statement, and the fact that the company is not

25    complying with labor code, totaling the number of hours.

                              44

1    BY MS. ZARGAROF:

2        Q    Any other ways in which you believe that

3    you've been damaged or harmed by your pay stub saying

4    "Longs"?

5        MR. ARELLANO:   Same objection.

6        THE WITNESS:   Well, I'm representing a class of

7    people, so there could be other damages to be

8    discovered.

9    BY MS. ZARGAROF:

10        Q    Any that you're aware of as you sit here now?

11        A    Apart from those, no.

12        Q    And I believe the second thing that you

13    mentioned was the total hours not being totaled.

14            Do I have that right?

15        A    Yes.

16        Q    And what do you mean by that?

17        A    Not adding them up and putting in one total,

18    one number.

19        Q    And when did you first notice that the hours

20    on your pay stub were not totaled up in one number?

21        A    In 2008.

22        Q    Same time as when you noticed the company name

23    issue?

24        A    Yes.

25        Q    So when advised by your lawyer; is that right?

45

1    Q    Do you recall the name of any of the women who

2    worked in the office?

3    A    No, I don't.

4    Q    And what exactly did you say to this

5    bookkeeper to whom you spoke about the total hours

6    issue."

7    A    I just mentioned the fact.  I really didn't

8    have much of a discussion.  It was more just

9    observation.  I said, "The hours aren't totaled.  I see

10   the hours, the breakdown, but no total."

11        She said, "Oh."  She looked at it, and she

12   didn't really give me an answer.  But it was very

13   fleeting.  It wasn't a legal discussion or anything.  It

14   was...

15   Q    So in response to your statement that the

16   hours were totaled, what did she say?

17   A    She said, "Well, it looks like it," and that

18   was the end of the conversation.  But the hours were

19   there.

20   Q    What do you mean "the hours were there"?

21        The hours that you worked were on there, they

22   just weren't totaled; is that what you mean?

23   A    Um, yes, the different sets of hours.  For

24   instance, you could get paid, if you look at the stub,

25   overtime, if there's a lunch penalty, vacation, but the

49

ABRAMS, MAH & KAHN

1    hours weren't totaled, as my other jobs, I did notice.

2         But she said, "Well" -- I guess she had never

3    seen it, if I had to guess.

4         Q    I'm sorry?

5         A    She never realized that -- nobody's brought it

6    to her attention, but...

7         Q    Did she say anything else about it at all?

8         A    No.

9         Q    And other than that one conversation that

10   you've described, is there -- did you have any other

11   conversations --

12        A    No.

13        Q    -- with -- let me finish my question.

14             Other than the conversation that you

15   described, did you have conversations with anyone else

16   at Longs about the fact that the hours weren't totaled

17   into one number on your pay stub?

18        A    No.

19        Q    Any reason why you didn't bring it up with

20   anyone else?

21        A    No reason, at the time.

22        Q    You ended your sentence with "at the time."

23             What do you mean by that?  Did there become a

24   reason at some point that you didn't bring it up with

25   anyone else?

                          50

1        A      In '07, I didn't -- I just left it at that.

2        Q      And up until today, other than the fact that

3    you filed a lawsuit, you haven't raised or discussed the

4    issue with anyone else at Longs; is that right?

5        A      I have not.

6        Q      And where else had you worked previously where

7    the total hours were listed as one number?

8        A      American Drug Stores, Sav-on.

9        Q      And do you feel that you were harmed or

10   damaged in any way by the fact that there wasn't a

11   single total of the hours you worked on your pay stub at

12   Longs?

13       MR. ARELLANO:  Objection; calls for a legal

14   conclusion.

15            You can answer.

16       THE WITNESS:  Yes, I believe so.  I was harmed.

17   BY MS. ZARGAROF:

18       Q     In what way were you harmed by that?

19       MR. ARELLANO:  Same objection.

20       THE WITNESS:  Well, I just -- I think I've answered

21   this question, but I'll just recap.  Not receiving a

22   proper wage statement.

23            And the second point is not -- not receiving a

24   number of hours is -- is not in compliance with labor

25   code, and that can lead to not being compensated in

                              51

1    accordance to law.

2           And, again, being a member -- sort of the

3    leader of this member -- this class of members, I mean,

4    other damages can be proven later.

5    BY MS. ZARGAROF:

6      Q    But you don't know any others as you sit here

7    now; is that right?

8      A    Not right now at this moment.

9      Q    Do you believe that you weren't compensated

10   correctly while you were at Longs?

11     A    Compensation was -- as far as my knowledge,

12   it's -- as far as my knowledge, it's correctly

13   compensated, yeah.

14     Q    And I believe the third thing you mentioned as

15   the basis of your lawsuit was the fact that your social

16   security number was not on your pay stub.

17          Do I have that right?

18     A    Not the full one, no.

19     Q    So it was just the last four digits; is that

20   right?

21     A    Yeah.

22     Q    And when did you first notice that your full

23   social security was not on your pay stub?

24     A    Sometime in '07.

25     Q    Do you recall when in '07?

52

ABRAMS, MAH & KAHN

1      A     I don't.

2      Q     Did you talk to anyone at Longs about the fact

3    that your full social security number was not on your

4    pay stub?

5      A     No, I did not.

6      Q     Any reason why not?

7      A     At the time, I -- I just noticed it, and

8    didn't pay further attention.

9      Q     And do you believe that you have been harmed

10   or damaged in any way by the fact that your full social

11   security number is not -- or was not on your pay stubs?

12     A     I believe that, yes, because, again, the wage

13   stub wasn't in compliance with the labor law.

14     Q     Any other damage or harm that you believe

15   you've suffered by the fact that your full social

16   security number was not on your pay stubs?

17     A     Not at the time -- not at this time.

18     Q     Have you discussed your lawsuit with any other

19   current or former Longs employees?

20     A     No, I have not.

21     Q     And I think you mentioned that you were

22   intending to bring this case as a class action.

23          Is that right?

24     A     Correct.

25     Q     And you're seeking to be the representative

                              53

1      A     No.

2      Q     Do you know if your counsel has made any

3    efforts to amend the complaint?

4      A     I'm not aware of that.

5      Q     And I think we established earlier that your

6    employment with Longs ended about December 7th of 2007.

7            Is that right?

8      A     Correct.

9      Q     And why did your employment at Longs end?

10     A     I was actually -- actually in the process of

11   moving to another company, and I was being -- actually

12   signed all the documentation.

13     Q     I'm sorry, I missed the last part.  You were

14   what?

15     A     I was actually being recruited by my old

16   company, Sav-on, and I had to work out a year.  And it

17   was actually a year.  Otherwise, I had to repay the

18   $5,000 bonus, sign-on bonus.

19     Q     You had to work a year at Longs?

20     A     Yes.

21     Q     And you started with Longs at about -- on

22   about November 30th of 2006?

23     A     Yes.

24     Q     And when did you agree to take the job with --

25   well, let me clarify.  I'm going to say "Sav-on"

                              55

1    page [sic] 21.

2              Did you review those requests?

3      A     At the time.

4      Q     And did you -- did you do a search for

5    documents that were responsive to those requests?

6      A     Yes.

7      Q     And you've produced all of those documents

8    that you located that you believed were responsive?

9      A     Yes.

10     Q     And in connection with that search, you've

11   produced some pay stubs from your employment at Longs;

12   is that right?

13     A     Yes.

14     MS. ZARGAROF:  Please mark this next in line.

15             (Deposition Exhibit 13 was marked for

16         identification and is attached hereto.)

17   BY MS. ZARGAROF:

18     Q     The court reporter has just handed you a stack

19   of documents we've marked as Exhibit 13.  And just so we

20   know what we have here, I'll letter them, and I'll do it

21   on the copy for the transcript as well.  I'll do that

22   with your counsel off the record.

23             But the first one I have, in the far

24   right-hand corner, has a check number 9073865.

25             Is that the first one you have, too?

84

ABRAMS, MAH & KAHN

1    MR. ARELLANO:  She's talking about the check number

2    (indicating).

3    THE WITNESS:  -65, yeah.

4    BY MS. ZARGAROF:

5    Q    And then it goes all the way through to -- the

6    very last one has the check number, in the upper

7    right-hand corner, 46875162?

8    A    Yes.

9    Q    And are these the pay stubs that you've

10   produced in connection with your litigation?

11   A    Yes.

12   Q    And these are all the pay stubs from Longs

13   that you still have?

14   A    Yes.

15   Q    And before the break, we talked a little bit

16   about the California Labor Commission.

17   Do you remember that?

18   A    Yes.

19   Q    And are you aware of whether the California

20   Labor Commission has issued a sample pay stub?

21   MR. ARELLANO:  Objection; calls for a legal

22   conclusion.

23   BY MS. ZARGAROF:

24   Q    You can still answer.

25   A    Has the California Labor Commission --

85

ABRAMS, MAH & KAHN

1   STATE OF CALIFORNIA      )
                             )      ss.
2   COUNTY OF ORANGE         )

3

4           I, Erika Kotteakos, Certified Shorthand

5   Reporter, Certificate No. 9698, do hereby certify:

6           That the foregoing proceedings were taken

7   before me at the time and place therein set forth, at

8   which time the witness was put under oath by me;

9           That the testimony of the witness and all

10  objections made at the time of the examination were

11  recorded stenographically by me and were thereafter

12  transcribed;

13          That the foregoing is a true and correct

14  transcript of my shorthand notes so taken.

15          I further certify that I am neither counsel

16  for nor related to any party to said action.

17          Dated this __31__ day of __August__, 2008.

18

19

20  _____Erika Kotteakos_____
                    Erika Kotteakos
21          Certified Shorthand Reporter No. 9698

22

23

24

25

ABRAMS, MAH & KAHN

1   STATE OF CALIFORNIA       )
                              )     ss.
2   COUNTY OF ORANGE          )

3

4        I, Erika Kotteakos, Certified Shorthand

5   Reporter, Certificate No. 9698, do hereby certify:

6        The foregoing deposition is a true and correct

7   copy of the original transcript of the proceeding taken

8   by me as thereon stated.

9

10  Dated   August 31, 2009

11

12

13              Erika Kotteakos
    _____
14              Erika Kotteakos
        Certified Shorthand Reporter No. 9698

15

16

17

18

19

20

21

22

23

24

25

ABRAMS, MAH & KAHN

**EXHIBIT B**

*Longs Drugs*

RECEIVED
DEC 0 5 2006
PAYROLL

General Offices: 141 North Civic Drive, P.O. Box 5222, Walnut Creek, California 94596, (925) 937-1170

November 2, 2006

DEPOSITION
EXHIBIT
2 (1-2)
Jones 8/25/09

137513   DOH 11/30/06

Charles Jones
8117 Camino Del Sol
La Jolla, CA 92037

VAC-PHARM 3

Dear Charles,

Thank you for your interest in joining Longs Drug Stores California, Inc. (the "Company"). We are pleased to offer you a position as a Pharmacy Manager in district #808 – San Diego. You will be placed in store #310 – La Jolla.

This letter will confirm the specifics of our offer of employment to you:

1. The position of Pharmacy Manager in district #808 as a full-time, 40 hours per week position. The wage for Pharmacy Manager is $53.00 per hour.

2. You will receive a sign on bonus in the amount of $5,000, less applicable payroll taxes, within the first thirty days of employment. Should you resign from the company within 1 year of your hire date, you will be required to repay the entire incentive amount.

3. You will be eligible for health benefits, long-term disability insurance and supplemental life insurance on the first day of the month following twelve weeks of employment (assuming a minimum of 30 hours per week). During the waiting period, with appropriate documentation, the Company will reimburse you for the cost of your COBRA payment(s). You will receive more information regarding the Company's benefits on your first day. In addition, you will be eligible to participate in the Company's Employee Savings and profit sharing plan immediately. The Company begins to match your contributions, per the provisions of the plan, after 90 days of continuous employment.

4. You will be eligible for, but not limited to, Longs Employee Purchase Program, Paid Holidays (after 30 days), and Paid Sick Leave (after 1 year).

5. Once you have been employed by the Company for 90 days, you will accrue vacation at the rate of 3 weeks per year. WAS VAC-PHARM 2

Please note that this offer and your acceptance are contingent upon completion of an employment application, proof of pharmacist license, and passing the pre employment drug and background screen, which must be completed within 24 hours of receipt of our signed offer letter. Please contact me at your earliest convenience to arrange your tests.

In addition, your employment is subject to all Company policies and practices regardless of reference herein. Unless expressly state, all employment at Longs is at will.

Charles, we look forward to you joining Longs Drugs. We are very proud of our professional pharmacies, our commitment to patient care, and our opportunities for advancement. Please



contact me at 925-260-3322 with any questions you have regarding this offer.  On behalf of
Longs Drug Stores California, Inc., we look forward to working with you.

Sincerely,

**LONGS DRUG STORES CALIFORNIA, INC.**

*Rita Gupta*

Rita Gupta, Pharm.D.
Director, Pharmacy Recruiting

I accept your offer of employment as stated in this letter.

_____            11-25-06
Signature                                   _____
                                            Date

2-2

**EXHIBIT C**

# Longs Drug Stores

P.O. BOX 5222 • WALNUT CREEK, CA 94596

JONES, CHARLES H.

| | | | |
|---|---|---|---|
| Pay Period Begin | 11/16/07 | Period End Date | 11/22/07 |
| Employee SSN | ***-**-8644 | Check Number | 46886218 |
| | | Employee Number | 137513 |

| WAGES | HOURS | RATE | AMOUNT | YTD AMOUNT | DEDUCTIONS | AMOUNT | YTD AMOUNT | DEDUCTIONS | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| REGULAR | 24.00 | 54.500 | 1,308.00 | 89,072.09 | FED WH | 383.43 | 19,030.11 | | | |
| VAC | 8.00 | 54.500 | 436.00 | 5,581.46 | MEDICR | 32.00 | 1,651.90 | | | |
| HOLIDAY | 8.00 | 54.500 | 436.00 | 2,228.26 | CA W/H | 138.75 | 6,747.34 | | | |
| OVERTIM | 0.62 | 81.758 | 50.69 | 7,662.70 | VIP | 133.84 | 11,713.11 | | | |
| GRP LIF | | | 1.73 | 56.60 | FSA | 25.65 | 872.10 | | | |
| SIGN BO | | | | 5,000.00 | CASDI | | 500.33 | | | |
| BONUS | | | | 3,859.00 | SOC SE | | 6,045.00 | | | |
| SCRIPT | | | | 1,777.00 | HEALTH | | 2,952.00 | | | |
| HOL WRK | | | | 1,296.00 | | | | | | |
| LUN PEN | | | | 648.50 | | | | | | |
| Other | | | | 566.81 | | | | | | |
| TOTALS | | | 2,232.42 | 117,748.42 | DEDUCTIONS TOTALS | | | | 713.67 | 49,511.89 |
| TAXABLE GROSS | | | 2,072.93 | 102,211.21 | NET PAY | | | | 1,517.02 | 68,179.93 |

| | | | | | | |
|---|---|---|---|---|---|---|
| ACH NET | | Acct 94503 | | 1,517.02 | Hours Type | Balance |
| | | | | | SCK-ELIG | -8.00 |
| | | | | | VAC-ELIG | 15.51 |

# Longs Drug Stores

P.O. BOX 5222 • WALNUT CREEK, CA 94596
JONES, CHARLES H.

| | | Pay Period Begin | 11/23/07 | Period End Date | 11/29/07 | Check Number | | 46896954 |
|---|---|---|---|---|---|---|---|---|

Employee SSN   ***-**-8644          Employee Number   137513

| WAGES | HOURS | RATE | AMOUNT | YTD AMOUNT | DEDUCTIONS | AMOUNT | YTD AMOUNT | DEDUCTIONS | AMOUNT | YTD AMOUNT |
|---|---|---|---|---|---|---|---|---|---|---|
| REGULAR | 31.90 | 54.500 | 1,738.55 | 90,810.64 | FED WH | 352.94 | 19,383.05 | | | |
| VAC | 8.00 | 54.500 | 436.00 | 6,017.46 | MEDICR | 30.41 | 1,682.31 | | | |
| OVERTIM | 0.47 | 81.766 | 38.43 | 7,701.13 | CA W/H | 128.62 | 6,875.96 | | | |
| GRP LIF | | | 1.73 | 58.33 | VIP | 132.78 | 11,845.89 | | | |
| BENEFIT | 1.00 | | | | HEALTH | 92.25 | 3,044.25 | | | |
| SIGN BO | | | | 5,000.00 | FSA | 25.65 | 897.75 | | | |
| BONUS | | | | 3,859.00 | CASDI | | 500.33 | | | |
| HOLIDAY | | | | 2,228.26 | SOC SE | | 6,045.00 | | | |
| SCRIPT | | | | 1,777.00 | | | | | | |
| HOL WRK | | | | 1,296.00 | | | | | | |
| Other | | | | 1,215.31 | | | | | | |
| TOTALS | | | 2,214.71 | 119,963.13 | | | | DEDUCTIONS TOTALS | 762.65 | 50,274.54 |
| TAXABLE GROSS | | | 1,964.03 | 104,175.24 | | | | NET PAY | 1,450.33 | 69,630.26 |

ACH NET                          Acct  94503              1,450.33

| Hours Type | Balance |
|---|---|
| SCK-ELIG | -8.00 |
| VAC-ELIG | 10.62 |

B2020

$\beta$

PROOF OF SERVICE

STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

        I am employed in the County of Los Angeles; I am over the age of eighteen years and not a party to the within entitled action; my business address is 333 South Hope Street, 48th Floor, Los Angeles, California 90071-1448.

        On **October 19, 2009**, I served the following document(s) described below as:

        **DECLARATION OF DANIEL J. McQUEEN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT OR PARTIAL SUMMARY JUDGMENT**

on the interested parties as follows:

        Marc Primo
        Matthew T. Theriault
        Dina Livhits
        Initiative Legal Group LLP
        1800 Century Park East, 2nd Floor
        Los Angeles, CA  90067
        telephone:  310-556-5637
        facsimile:  310-861-9051

☒    **BY CM/ECF SYSTEM**:  I caused the above-referenced document(s) to be sent by electronic transmission to the Clerk's Office using the CM/ECF System for filing which generated a Notice of Electronic Filing to the CM/ECF registrants in this case.

☒    **FEDERAL:**  I declare that I am employed in the office of a member of the bar of this Court at whose direction the service was made.  I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

        Executed on **October 19, 2009**, at Los Angeles, California.

                    /s/ *Lynda G. Johnson*
                    Lynda G. Johnson